**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CAYLA LUNEMANN,** *individually and on behalf of similarly situated persons*, | **CIVIL ACTION** |
| Plaintiff, | **NO. 23-3704-KSM** |
| *v.* | |
| **KOOMA III LLC,** | |
| Defendant. | |

<u>**MEMORANDUM**</u>

**Marston, J.**                                                                                    **May 13, 2024**

This is a putative class action and Fair Labor Standards Act ("FLSA") collective lawsuit brought by named Plaintiff Cayla Lunemann. (*See* Doc. No. 1.) Plaintiff alleges that Defendant Kooma III LLC violated the minimum wage provisions of the FLSA and the Pennsylvania Minimum Wage Act ("PMWA"). (*Id.*) Presently before the Court is Plaintiff's Unopposed Motion for Preliminary Approval of the Class Action Settlement (the "Motion"). (Doc. Nos. 20, 21.) For the reasons below, the Motion is granted, and the Court will schedule a final approval hearing.

## I.      BACKGROUND

Plaintiff Cayla Lunemann worked as a server at Kooma Asian Fusion & Sushi Bar, located in King of Prussia, Pennsylvania.[1] (Doc. No. 1 at ¶¶ 7, 9.) The FLSA and PMWA both entitle employees to a minimum wage of $7.25 per hour. (Doc. No. 21 at 4); 29 U.S.C. § 206; 43 Pa. Cons. Stat. § 333.101(a.1). Notwithstanding, restaurants may pay servers as little as $2.83

---

[1] Plaintiff ended her employment with Defendant in January 2023. (Doc. No. 1 at ¶ 9.)

per hour and use customer tips to offset the difference, known as a "tip credit." (Doc. No. 21 at 4); *see generally* 29 U.S.C. § 203(m); 43 Pa. Cons. Stat. § 333.103(d). However, restaurants that benefit from a tip credit may not allow servers' tips to be shared with other restaurant employees who do not "customarily and regularly receive tips." *Id.*; *see, e.g.*, 29 C.F.R. §531.54(c)(1); 34 Pa. Code § 231.112(a).[2]

It is undisputed that Defendant took a $4.42 per hour tip credit in paying Plaintiff and other servers (i.e., Defendant paid servers $2.83 per hour). (Doc. No. 21 at 4.)   In September 2023, Plaintiff filed this lawsuit individually and on behalf of others similarly situated, alleging that Defendant improperly shared the servers' tips with the sushi chefs at Kooma because the chefs' role consisted almost exclusively of food preparation duties, rather than customer-facing duties. (Doc. No. 1 at ¶¶ 12, 13.) Additionally, Plaintiff alleged that Defendant improperly required Plaintiff and other servers to perform non-tip-producing work such as preparing salads and desserts, cleaning the restaurant, etc. while still utilizing the tip credit. (*Id.* at ¶¶ 14, 26, 30.) The complaint alleges both collective and class allegations—Plaintiff brought collective allegations under the FLSA and class allegations under the PMWA. (*Id.* at ¶¶ 16, 17.) Defendant responds that the sushi chefs are properly entitled to share the servers' tips because they engaged in direct contact with the restaurant's customers. (Doc. No. 10 at ¶ 13.)

Following a period of discovery, Plaintiff identified 43 other servers who had also been subject to the allegedly improper tip credit from September 22, 2020 to December 10, 2023 and determined that collectively, the total possible recovery for the tip credit would be $200,496 for

---

[2] Whether an employee is entitled to share tips is a question of fact that may consider the various duties and activities of employees, such as the employee's level of interaction with customers and whether the employee performed customer service functions. *Fiumano v. Metro Diner Mgmt. LLC*, No. 17-645, 2023 WL 1805135, at *11 (E.D. Pa. Feb. 7, 2023) (internal citations omitted).

45,361 hours worked as servers.[3, 4] (Doc. No. 21 at 6.)  The parties engaged in "arms-length negotiation" with the Honorable Magistrate Judge Carol Sandra Moore Wells, who successfully led the parties to a settlement in principle on January 9, 2024.  (*Id.*)  Plaintiff filed the unopposed Motion on March 8, 2024 seeking an order granting preliminary approval of the class action settlement.  (*See generally* Doc. No. 20.)  The Court held a hearing on the Motion on April 23, 2024.  (Doc. No. 24.)

## II.    Hybrid Action

As discussed, Plaintiff brought this suit as a hybrid class action and FLSA collective, yet here she seeks preliminary approval only of the *class* settlement.  (Doc. Nos. 1, 21.)  "Hybrid actions have troubled district courts across the country because of the inherent conflict between the opt-in requirement of FLSA collective actions and the opt-out provisions of Rule 23(b)(3) class actions."  *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 123 (D. Colo. 2016).  "Notably, in a Rule 23 class action, a prospective party plaintiff is automatically included in the class unless he 'opt[s]-out of the class upon notice of the action.'  However, 'prospective class members in a FLSA collective action must affirmatively opt-in to be bound by any judgment.'"  *Knight v. Pub. P'ships, LLC*, No. 19-2461, 2020 U.S. Dist. LEXIS 118596, at *7 (E.D. Pa. July 7, 2020) (citations omitted).

---

[3] The parties explained during the Court's hearing on preliminary settlement approval that the damages that flowed from the theory that Defendant allegedly utilized the tip credit while requiring Plaintiff to perform non-tip-producing work were subsumed within the theory that Defendant improperly shared tips with sushi chefs.  (Draft Hr'g Tr. at 7:3–8:13.)  Plaintiff's counsel explained that the recovery obtained in the settlement encompasses all the servers' hours and exceeds the tip credit amount that the servers would have obtained if they succeeded in their claim that they were paid less than minimum wage for non-tip-producing work.  (*Id.*)  Thus, the amount of $200,496 represents the total possible recovery for both allegations.

[4] On December 28, 2023, Rosario Lopez filed a notice to join the FLSA collective action pursuant to 29 U.S.C. § 216(b).  (Doc. No. 13.)  To date, no other individuals have formally opted into the FLSA collective.

Although Plaintiff does not seek preliminary approval of the *collective* settlement, the proposed settlement implicates their rights.  Notably, the proposed release would bind collective members who do not affirmatively opt-out of the settlement to the release of FLSA claims. (Doc. No. 20-1 at ¶ 8; Doc. No. 26-1 at 3.)  Specifically, the proposed notice[5] states, "If you do not exclude yourself from the settlement by following the procedures in Section 6 and the Court approves the settlement, you will waive the right to recover both wages and liquidated damages under the FLSA."  (Doc. No. 26-1 at 3.)

In *Then v. Great Arrow Builders, LLC*, our sister court approved of a hybrid class/collective lawsuit where the release bound class members who did not affirmatively opt-out of the settlement to the release of FLSA claims which they never opted into.  2:20-CV-00800-CCW, 2022 U.S. Dist. LEXIS 32051, at *12 (W.D. Pa. Feb. 23, 2022).  The court reasoned that the release was acceptable "because the proposed notice appears to fully inform settlement class members of what they must do to opt-out of the settlement and preserve any FLSA claim they might have."  *Id.*; *see id.* (citing cases supporting the proposition that "opt-in FLSA claims may properly be released through an opt-out class settlement").  Plaintiff here requests that the Court follow *Great Arrow Builders*, arguing that the Court need not conditionally certify the FLSA collective at this stage and should instead certify the collective at the final settlement approval stage.  (Doc. No. 26 at 3–4.)  Here, the Court agrees that the opt-in FLSA claims may be properly released through the opt-out class settlement because the parties provided a clear and comprehensive explanation of the release in the proposed notice, and the class members are fully informed as to how to preserve "any FLSA claim they might have."  (*See* Doc. No. 26-1 at 3);

---

[5] On April 30, 2024, Plaintiff filed a memorandum in further support of her Motion, which includes a revised proposed notice of settlement.  (Doc. No. 26.)  The revised notice emphasizes the consequences of failing to opt out of the settlement.  (Doc. No. 26-1 at 3.)  For purposes of the Court's analysis of the Motion, the Court considers the revised notice to be the operative proposed notice.

*Great Arrow Builders*, 2022 U.S. Dist. LEXIS 32051, at *12.  The Court preserves any discussion of the collective certification until the final approval stage, when we will consider whether the members of the collective are similarly situated under the *Zavala* factors.  *See Brown v. Kadence Int'l, Inc.*, 22-1097-KSM, 2023 U.S. Dist. LEXIS 49202, at *10 (E.D. Pa. Mar. 23, 2023) (approving a FLSA collective settlement using a one-step approval process).

### III.    Preliminary Certification of the Class for Settlement Purposes

#### a.  Legal Standard

The Court may certify class actions for the sole purpose of settlement.  *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 476 (E.D. Pa. 2010) (citing *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786 (3d Cir. 1995)).  When the district court is presented with a class settlement agreement, the court must first determine whether the requirements for class certification under Rule 23(a) and (b) are met, and separately determine that the settlement is fair, reasonable, and adequate.  *Great Arrow Builders*, 2022 U.S. Dist. LEXIS 32051, at *3–4 (citing *In re Nat'l Football Players Concussion Injury Litig.*, 775 F.3d 570, 581 (3d Cir. 2014)).  In these situations, the court first provisionally certifies the class, but reserves "[f]inal certification" until it "rules on whether the final settlement agreement is to be approved."  *Id.*[6]

---

[6] At the final approval stage, the Court applies the more demanding *Girsh* factors to determine the fairness of the settlement agreement.  *See Great Arrow Builders*, 2022 U.S. Dist. LEXIS 32051, at *5 n.1 (citing *GMC*, 55 F.3d at 78).  The *Girsh* factors are as follows:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risk of establishing damages; (6) risk of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure give the requirements for certifying a class.  Under Rule 23(a), a class action is allowable only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015) ("All potential classes must initially satisfy four prerequisites to be certified: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.").

Additionally, the class must be currently and readily ascertainable based on objective criteria.  *Marcus v. BMW of N. Am. LLC*, 687 F.3d 583, 593 (3d Cir. 2012).  If the Rule 23(a) and ascertainability conditions are met, then a case may proceed as a class action if one of the conditions of Rule 23(b) is also satisfied.  Here, Plaintiff seeks certification for a class under Rule 23(b)(3), which requires that "the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *see also Reyes*, 802 F.3d at 482 (explaining that plaintiff must demonstrate "predominance and superiority" for certification under Rule 23(b)(3)).

**b.  Analysis**

Plaintiff proposes a class of "all individuals who, during any time between September 22,

---

*Girsh v. Jepson*, 521 F.3d 153, 157 (3d Cir. 1975) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)) (cleaned up).

2020 and December 10, 2023, worked as servers at Kooma Asian Fusion & Sushi Bar in King of Prussia, PA." (Doc. No. 21 at 6; Doc. No. 20-1 at 1.) The class is ascertainable and meets all six requirements of Rules 23(a) and 23(b). We will address each in turn.

### i. Ascertainability

The plaintiff has the burden of showing, by a preponderance of the evidence, that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (citing *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013)). The class here is clearly ascertainable because the parties were able to determine the exact number and identities of servers using Defendant's records, including payroll data, of its past and present employees. (Doc. No. 21 at 6.)

### ii. Rule 23(a) Requirements

*Numerosity*

While "[t]here is no magic number of class members needed for a suit to proceed as a class action," the Third Circuit has held that "numerosity is generally satisfied if there are more than 40 class members." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 426 (3d Cir. 2016). Here, the proposed class is sufficiently numerous because it consists of 44 people, including the named Plaintiff. The Court is satisfied that this is enough people to render joinder impracticable. Fed. R. Civ. P. 23(a).

*Commonality*

As the Third Circuit has explained, "[a] putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Nat'l Football League Players*, 821 F.3d at 426–27 (quoting

7

*Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013)).  It is "easy enough" to meet the requirement, provided all members of the class have claims that are capable of class-wide resolution.  *Id.*  Commonality is met in this case because each member of the proposed class was subject to the same conduct by Defendant—the policy of sharing the servers' tips with the sushi chefs, and alleges that such conduct violated state and national law.

***Typicality***

There is a "'low threshold' for typicality"; provided "the interests of the class and the class representative are aligned," courts will find typicality even when class members' claims are only legally similar, and not factually similar.  *Id.* at 427–28 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182–83 (3d Cir. 2001)).  Plaintiff's claims here are both legally and factually similar to those of the putative class because all class members worked for Defendant as servers, were paid subject to the tip credit, and shared tips with sushi chefs— and the legality of this practice under the PMWA constitutes a shared legal claim.

***Adequacy of Representation***

Courts considering adequacy of representation examine both "the qualifications of class counsel and the class representatives."  *Id.* at 428.

First, when considering the adequacy of class representatives, courts seek "to root out conflicts of interest within the class" and to "uncover conflicts of interest between the named parties and the class they seek to represent."  *Id.* at 428, 430 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).  "A class representative must represent a class capably and diligently," but this is a low bar: "'a minimal degree of knowledge' about the litigation is adequate."  *Id.* at 430 (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)).  "[T]he linchpin of the adequacy requirement is the alignment of

interests and incentives between the representative plaintiffs and the rest of the class." *In re Cmty. Bank of N. Va.*, 795 F.3d at 393 (quoting *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012)).  Here, this requirement is satisfied because Plaintiff was a server subject to Defendant's challenged policy, and Plaintiff's only legal claims are asserted on behalf of the class.  She has no other claims or interests.  (*See* Doc. No. 21 at 10.)  Additionally, the named Plaintiff has represented the class by seeking legal representation to initiate this suit to obtain relief, making herself available to Plaintiff's counsel throughout the litigation, and participating in a portion of the mediation.  (*Id.* at 15.)

Second, with respect to class counsel, the important factors are whether the attorneys "(1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant."  *In re GMC*, 55 F.3d at 801.  The Third Circuit has indicated that courts should consider the non-exhaustive list of factors in Rule 23(g) for appointing counsel in determining the adequacy of representation.  *See In re Nat'l Football League Players*, 821 F.3d at 429.  Those factors include counsel's work in the instant class action, experience in handling class actions or other kinds of complex litigation, knowledge of the applicable laws, and resources available for representing the class.  Fed. R. Civ. P. 23(g)(1)(A).  Additionally, the court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  Here, the proposed class counsel—Pete Winebrake, Esquire, and Michelle Tolodziecki, Esquire, of Winebrake & Santillo, LLC—are qualified to "fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Plaintiff's attorneys have substantial experience handling class litigation under US wage laws.  (*See* Doc. No. 21 at 11; Doc. No. 20-2 at ¶¶ 3, 4, 7–13.)  The attorneys have diligently pursued this matter—spending approximately 78 hours litigating this matter up to this

point—by promptly propounding discovery, working with Defendant's counsel to resolve

conflict without the Court's intervention, and analyzing the potential damages owed to the class.

(Doc. No. 21 at 10–13.)  Last, the parties worked with Magistrate Judge Wells to facilitate arms'

length negotiations, which weighs in favor of finding adequacy.  *See Fulton-Green v. Accolade,*

*Inc.*, Civil Action No. 18-274, 2019 WL 4677954, at *6 (E.D. Pa. Sept. 24, 2019) (collecting

cases).  Thus, the Court finds that the proposed class's interests have been advanced by

experienced, dedicated counsel, working at arms' length from Defendant in accordance with

Rule 23(a)(4).

***

In sum, the Court finds that the Rule 23(a) conditions for class certification are

met here.

### iii.   Rule 23(b)(3) Requirements

As discussed above, in addition to meeting the requirements of Rule 23(a), the putative

class must also satisfy Rule 23(b)(3), which requires the Court to find that "the questions of law

or fact common to class members predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for the fair and efficient

adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  The key issue under the

predominance factor is "whether proposed classes are sufficiently cohesive to warrant

adjudication by representation."  *Amchem*, 521 U.S. at 623.  The Third Circuit has counseled that

courts should be "more inclined to find the predominance test met in the settlement context."  *In*

*re Nat'l Football League Players*, 821 F.3d at 434 (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d

273, 304 n.29 (3d Cir. 2011) (en banc)).

***Predominance***

Here, predominance is satisfied.  The claims of all members of the putative class rely on common questions of fact: the extent to which the sushi chefs at Kooma engaged in customer-facing work entitling them to share tips with servers.  (Doc. No. 21 at 4–5.)  Likewise, each class member's claim raises an identical question of law: whether Defendant's policy of sharing servers' tips with sushi chefs violated the PMWA.  Taken together, these common questions of law and fact predominate over individual factual questions, such as the number of hours each server worked and the extent to which each server was denied the full amount of tips earned.

***Superiority***

Lastly, the parties have demonstrated the class action mechanism is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  When evaluating this requirement, courts consider "the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action."  *In re Nat'l Football League Players*, 821 F.3d at 435 (citing Rule 23(b)(3)(A)–(D)).  Superiority can be satisfied where the settlement prevents "duplicative lawsuits and enables fast processing of a multitude of claims."  *Id.* (quoting *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 382 (E.D. Pa. 2015)); *see also Sullivan*, 667 F.3d at 312.

Here, Plaintiff's counsel estimates that the average class member's maximum alleged unpaid wages average only $4,557.  (Doc. No. 21 at 11.)  Thus, the "relatively small size of the claims each class member is entitled to makes it practically difficult—if not impossible—for individual Class Members to control their own suits."  *Stechert v. Travelers Home & Marine Ins. Co.*, No. 17-0784-KSM, 2021 U.S. Dist. LEXIS 218071, at *18 (E.D. Pa. Nov. 9, 2021).  It is

also desirable to concentrate litigation in the forum.  The Court recognizes that there are 44 class members (including the named Plaintiff), and the parties have not specified how many class members are located in the Eastern District of Pennsylvania.  (Doc. No. 21.)  Nonetheless, because all the class members worked as servers at Defendant's restaurant in King of Prussia, PA—in the Eastern District—we find that it is desirable to concentrate litigation in this Court.

Moreover, there are not likely to be difficulties in managing the class action.  Once the Court grants preliminary approval of the parties' settlement agreement, only final approval of the settlement agreement remains.  While it is conceivable that a great many members of the class could object to the terms of the settlement, thus making final approval difficult, this is unlikely. *See* Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 Vand. L. Rev. 1529, 1546 (2004) (finding that just 0.1 percent of class members opt out of class actions and similarly small numbers object). Moreover, even if there were a substantial number of objectors, evaluating their concerns in this case would be much simpler than them bringing entirely separate suits.  *See In re Nat'l Football League Players*, 307 F.R.D. at 382.  Accordingly, superiority is met in this case.

***

For these reasons, we find that the requirements of Rules 23(a) and 23(b)(3) are satisfied, and the Court provisionally certifies the class.

### c.  Appointment of Class Representative

Appointment of class representatives is governed by Rule 23(a) of the Federal Rules of Civil Procedure, which requires that their claims be "typical of the claims . . . of the class" and that they "will fairly and adequately protect the interests of the class."  For the reasons previously discussed in Part III.b.ii, those requirements are met here, and the Court will appoint

Cayla Lunemann as representative of the settlement class.

### d. Appointment of Class Counsel

Rule 23(g) of the Federal Rules of Civil Procedure provides the standard for the appointment of class counsel.  Class counsel are responsible not just for representing the interests of the class representative, but for "fairly and adequately represent[ing] the interests of the class." Fed. R. Civ. P. 23(g)(4).  As discussed above in Part III.b.ii, Rule 23(g) provides a non-exclusive list of factors courts should consider when appointing class counsel.  For the reasons previously discussed, the Court finds that Pete Winebrake, Esquire, and Michelle Tolodziecki, Esquire, of Winebrake & Santillo, LLC have the ability and resources to "fairly and adequately represent the interests of the class."  Accordingly, they will be conditionally appointed as class counsel.

### IV.     Preliminary Approval of the Settlement Agreement

The parties also ask the Court to preliminarily approve their settlement agreement which was negotiated at arm's length with the assistance of Magistrate Judge Wells.  (*See generally* Doc. No. 21.)

### a. Settlement Agreement[7]

The settlement class consists of all individuals who, during any time between September 22, 2020 and December 10, 2023, worked as servers at Kooma Asian Fusion & Sushi Bar in King of Prussia, PA.  (Doc. No. 21 at 6; Doc. No. 20-1 at 1.)  The parties agree that the putative class covers the 44 individuals (including Plaintiff) identified in Exhibit A to the Settlement Agreement (Doc. No. 20-1).  (Doc. No. 21 at 6.)

The settlement requires Defendant to make a maximum payment of $112,500, plus any

---

[7] Unless otherwise noted, terms such as "class" have the meanings ascribed in the parties Class Action Settlement Agreement.  (*See* Doc. No. 20-1.)

associated employer-side taxes.  (Doc. No. 20-1 at ¶ 2.)  The settlement contemplates that $33,750 of the fund (equaling 30% of the total settlement fund) be paid to class counsel for fees and costs, and $3,000 of the fund be paid to Plaintiff as a service award.  (*Id.* at ¶¶ 11, 12.)  Any disapproved amounts from the attorney's fees and service award will enhance the class members' pre-tax payments.  (*Id.*)  If the above payments are approved, the class members will share in $75,750 (subject to tax withholdings).  (*See id.* at 11.)  Each class members' share of the $75,750 will be calculated based on the class members' *pro rata* percentage share of the estimated $200,496 owed to the class members.  (*Id.*; Doc. No. 21 at 7.)  This is a non-reversionary settlement.  (Doc. No. 21 at 7.)  In other words, to receive a settlement payment, class members are not required to complete a "claim form" or any other document.  (Doc. No. 20-1 at ¶¶ 1, 10.)  With the exception of any payments attributable to putative class members who properly exclude themselves from the lawsuit, no portion of the $112,500 settlement fund will be returned to Defendant.  (*Id.*)  Any proceeds associated with uncashed checks will be donated to the Pennsylvania Interest on Lawyers' Trust Accounts ("IOLTA") Board.  (*Id.* at ¶ 10.)

Within 7 calendar days after the Court's preliminary approval, Defendant's counsel will send to class counsel an Excel spreadsheet containing each class member's name and last known residential address.  (Doc. No. 21 at 7.)  Within 14 calendar days after approval, class counsel anticipates mailing to each class member a detailed notice form that describes the litigation and the settlement.[8]  (*Id.*; Doc. No. 20-1 at ¶ 7.)  This notice form is "individualized" to inform each class member of their expected payout amount and the manner by which such amount was calculated.  (*See* Doc. No. 20-1 at 13–15.)  In addition, the notice form explains how class

---

[8] *See supra* n.5.

members can exclude themselves from or object to the settlement; describes the scope of the release; identifies class counsel; informs class members as to the amount of fees and expenses sought by class counsel; and informs class members of the time and location of the final fairness hearing.  (*Id*.)

If this settlement is approved, class members who do not exclude themselves from the settlement will be bound by a release that is limited to the instant litigation.  (Doc. No. 21 at 8.) Specifically, the release is limited to:

> all legal or equitable claims, whether known or unknown, arising prior to December 10, 2023, and asserted in or reasonably related to the Action, including, but not limited to, all such claims arising under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*., the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq*., the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq*., or any other federal, state, or local statute, regulation, ordinance, or common law theory seeking unpaid wages or any associated penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable or other relief.

(Doc. No. 20-1 at ¶ 1.)

### b.  Rule 23(e)

Preliminary approval of a proposed class-action settlement is left to the discretion of the trial court and is based on an examination of whether the proposed settlement is "likely" to be approved under Rule 23(e)(2).  Fed. R. Civ. P. 23(e)(1)(B)(i); *see In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998); *see also In re Traffic Exec. Ass'n-E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980) ("[Preliminary approval] is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.").

To approve a proposed class action settlement, a settlement must be "fair, reasonable, and

adequate." Fed. R. Civ. P. 23(e)(2).  Rule 23(e)(2) of the Federal Rules of Civil Procedure provides multiple considerations to consider whether the proposed settlement is fair, including whether (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other.  The Court addresses each factor in turn, finding that all factors weigh in favor of conditional approval.

### i.  Adequate Representation

Plaintiff Cayla Lunemann has adequately represented the class as class representative. "She has not taken part in any side deals, nor does this basic money settlement benefit her more than other class members." *Katz v. DNC Servs. Corp.*, No. 16-5800, 2023 U.S. Dist. LEXIS 65901, at *22 (E.D. Pa. Apr. 14, 2023).  Lunemann does seek a $3,000 service award, but she has contributed to this litigation by seeking representation to pursue the claims and by participating in mediation.  (Doc. No. 20-1 at ¶ 12; Doc. No. 21 at 15 n.5.)  The Court will render its final review of the proposed service award at the time of the final approval hearing.

Class counsel has also adequately represented the class.  In this matter, Pete Winebrake, Esquire, and Michelle Tolodziecki, Esquire, of Winebrake & Santillo, LLC have successfully litigated the case by participating in extensive class-wide discovery and engaging in mediation prior to reaching a settlement-in-principle in January 2024.  (Doc. No. 21 at 10–13.)  Winebrake & Santillo, LLC also has "considerable experience prosecuting, defending, and settling wage and hour claims such as this one." *Katz*, 2023 U.S. Dist. LEXIS 65901 at *23; (*see* Doc. No. 21 at 11; Doc. No. 20-2 at ¶¶ 3, 4, 7–13.)  Thus, the Court finds that this factor weighs in favor of settlement approval.  *See also supra* Part III.b.ii.

### ii.   Arm's-Length Negotiations

The settlement negotiations here occurred at arm's length; settlement was only reached following a conference with Magistrate Judge Wells.  (Doc. No. 21 at 14.)  *See In re Wawa Data Sec. Litig.*, No. 19-6019, 2021 WL 3276148, at \*8–9 (E.D. Pa. July 30, 2021) (holding that the settlement negotiations were conducted at arm's length where a "highly-experienced mediator" assisted with the parties' negotiations).

### iii.   Adequate Relief

Next, the Court determines whether the settlement provides adequate relief by taking into account (a) the costs, risks, and delay of trial and appeal; (b) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (c) the terms of any proposed award of attorney's fees, including timing of payment; and (d) any agreement required to be identified under Rule 23(e)(3).  Fed. R. Civ. P. 23(e)(2)(C).

***Risk***

Here, the Settlement is reasonable in light of the best possible recovery and attendant risks of litigation.  In this case, the parties conducted discovery to determine the total number of servers who worked for Defendant and the total possible recovery they could recover.  (Doc. No. 21 at 6.)  Of the total possible $200,496 owed to 44 servers, Defendant will pay $112,500 plus any associated employer-side taxes, and the class members will share $75,750 after the attorney's fees and named representative service award are deducted.  (Doc. No. 21 at 6–7.)  The $112,500 settlement amounts to 56% of the total alleged unpaid wages.  (*Id.* at 14.)  Class counsel explained that other courts have determined that questions regarding whether sushi chefs are entitled to share tips is a question of fact that must go to a jury.  (*Id.* at 5.)  Class counsel points to case law, a U.S. Department of Labor opinion letter, and the Defendant's affirmative

defense suggesting that there is risk in establishing liability in this case.  (*Id.*)  Counsel thus demonstrates that there is a risk of establishing liability, and in turn, damages, because there is a factual dispute as to whether the sushi chefs at Defendant's restaurant engaged in enough customer interaction to warrant the sharing of tips.  (*Id.*)  Thus, although the potential recovery at trial is higher than that provided in the settlement agreement, the Court agrees with the parties that the $112,500 settlement amount is reasonable and represents a fair value of the attendant risks of litigation.

### *Distribution*

The Court holds that the proposed method of distributing relief to the class, including the method of processing class-member claims, is sufficiently effective.  *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).  Each class members' share of the settlement fund will be calculated based on the class members' *pro rata* percentage share of the estimated $200,496 owed to the class members. (Doc. No. 20-1 at ¶¶ 11, 12; Doc. No. 21 at 7.)  Class members are not required to complete a "claim form" or any other document to receive a payment.  (Doc. No. 20-1 at ¶¶ 1, 10.)

The Settlement Agreement contemplates that $33,750 of the fund (equaling 30% of the total settlement fund) be paid to Plaintiff's lawyers for fees and costs, and $3,000 of the fund be paid to Plaintiff as a service award.  (*Id.* at ¶¶ 11, 12.)  Any disapproved amounts from the attorney's fees and service award will enhance the class members' pre-tax payments.  (*Id.*)  If the above payments are approved, the class members will share in $75,750 (subject to tax withholdings).  (*See id.* at p. 11.)

With the exception of any payments attributable to putative class members who properly exclude themselves from the lawsuit, no portion of the $112,500 settlement fund will be returned to Defendant.  (*Id.* at ¶ 10.)  Any proceeds associated with uncashed checks will be donated to

the Pennsylvania Interest on Lawyers' Trust Accounts ("IOLTA") Board.  (*Id.*)  The Court concludes that this method of distribution is sufficiently effective.

***Attorney's Fees***

Class counsel seeks $33,750 of the fund, which equals 30% of the total fund.  (*Id.* at ¶ 11.)  On its face, the Court finds this award appears fair, reasonable, and adequate.  *See Mabry, v. Hildebrandt*, No. 14-5525, 2015 U.S. Dist. LEXIS 112137, at *9 (E.D. Pa. Aug. 24, 2015) (collecting cases demonstrating the percentage of recovery award in FLSA common fund cases ranges from roughly 20-45% in the Third Circuit).

***23(e)(3) Agreement***

Rule 23(e)(2)(C)(iv) of the Federal Rules of Civil Procedure provides that in considering whether a proposed settlement is fair, the court must consider whether any agreement among the parties exists outside of the settlement agreement as identified in Rule 23(e)(3).  Rule 23(e)(3) in turn provides that "parties seeking approval must file a statement identifying any agreement made in connection with the proposal."  Here, the parties have not identified any such agreement, so this factor is neutral.

### iv.  Equitable Treatment of Class Members Relative to Each Other

Last, the Court considers whether the proposed Settlement Agreement treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2)(D).  Here, the Settlement Agreement intends to calculate each class members' share of the settlement fund based on a *pro rata* percentage of the number of hours worked for Defendant.  (Doc. No. 20-1 at ¶¶ 11, 12; Doc. No. 21 at 7.)  The Court finds that this proposal equitably treats the class members relative to each other.

\* \* \*

In sum, the Settlement Agreement is fair, reasonable, and adequate, and does not otherwise reveal any deficiencies.[9]

### c. Notice

The Court is also satisfied that the form and content of the notice to the settlement class is adequate.[10] "The notice to the proposed class must be the 'best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Katz*, 2023 U.S. Dist. LEXIS 65901, at *7 (citing Fed. R. Civ. P. 23(c)(2)(B)). Additionally, principles of due process "require[] that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *In re Nat'l Football League Players*, 821 F.3d at 435 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The notice documents must provide a detailed description of the settlement, the

---

[9] The parties name the Pennsylvania IOLTA Board, an organization "support[ing] the provision of civil legal services to the Commonwealth's poor and disadvantaged," as the intended *cy pres* recipient of any remaining undistributed settlement funds. (Doc. No. 20-1 at ¶ 10); *About PA IOLTA*, PA IOLTA, https://www.paiolta.org/about-pa-iolta/. The Settlement Agreement provides that "[a]ny check that remains uncashed 120 calendar days after the Effective Date will be forfeited by the Claimant, and the underlying funds (not including payroll taxes/withholdings ordinarily borne by Defendant) will be donated to the Pennsylvania IOLTA Board." (Doc. No. 20-1 at ¶ 10.)

The *cy pres* doctrine "may be used to direct excess funds to a third-party for a purpose related to the class injury." *Huffman v. Prudential Ins. Co. of Am.*, No, 10-cv-5135, 2020 U.S. Dist. LEXIS 140539, 2020 WL 4530150, at *1 (E.D. Pa. Aug. 6, 2020). "In the normal *cy pres* scenario, parties may seek to distribute to a nonparty (or nonparties) the excess settlement funds for their next best use—a charitable purpose reasonably approximating the interests pursued by the class." *Id.* (internal quotation marks omitted) (quoting *In re: Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 327 (3d Cir. 2019)). "Approval of a settlement agreement which names a *cy pres* recipient is warranted when the court finds that the settlement, taken as a whole, is fair, reasonable, and adequate from the perspective of the class." *Katz*, 2023 U.S. Dist. LEXIS 65901, at *31 (citing *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 172–73 (3d Cir. 2013) (cleaned up)). Here, the inclusion of the Pennsylvania IOLTA Board as the intended *cy pres* recipient does not change the Court's conclusion that the settlement is fair, reasonable, and adequate.

[10] *See supra* n.5.

circumstances leading to it, and the consequences of objecting or opting out.  *See In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 310–12 (3d Cir. 2004).

Here, we find that the requirements of Rule 23 and due process are satisfied by the parties' proposed notice plan.  As discussed above, within 7 calendar days after the Court's preliminary approval, Defendant's counsel will send to class counsel an Excel spreadsheet containing each class member's name and last known residential address.  (Doc. No. 21 at 7.)  Within 14 calendar days after approval, class counsel anticipates mailing to each class member a detailed notice form that describes the litigation and the settlement.  (*Id.*; Doc. No. 20-1 at ¶ 7.)  Class counsel will "work diligently to ensure that class member addresses are accurate and updated and to re-mail any notice forms that returned by the Postal Service as undeliverable." (Doc. No. 21 at 7.)

Moreover, we are satisfied that the content of the proposed notice satisfies Rule 23 and due process.  The notice explains, in plain language, the genesis of the lawsuit, who the interested parties are, how the suit came to be settled, how class members' claims will be calculated, the process for making a claim, the process for opting out of the settlement, the process for objecting to the settlement, and the consequences of opting out or objecting to the settlement.  (*See generally* Doc. No. 26-1 at 2–4.)  As written, the proposed notice will ensure that "interested parties [are apprised] of the pendency of the action and afford them an opportunity to present their objections."  *In re Nat'l Football League Players*, 821 F.3d at 435 (quoting *Mullane*, 339 U.S. at 314).

\*\*\*

For these reasons, the Court grants preliminary approval of the class action settlement.

## V.     CONCLUSION

The parties' proposed settlement was negotiated by experienced counsel with the help of a federal magistrate judge.  It provides significant benefits to the class members.  The Court is satisfied that preliminary approval is appropriate.  Accordingly, Plaintiff's Unopposed Motion for Preliminary Approval is granted.  A Fairness Hearing is scheduled for August 1, 2024, at 10:00 a.m.

An appropriate order follows.