## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **CAYLA LUNEMANN,** *individually and on behalf of similarly situated persons*,<br><br>Plaintiff,<br><br>*v.*<br><br>**KOOMA III LLC,**<br><br>Defendant. | **CIVIL ACTION**<br><br>**NO. 23-3704-KSM** |

## MEMORANDUM

**Marston, J.**                                                                   **August 8, 2024**

This is a class action and Fair Labor Standards Act ("FLSA") collective lawsuit brought by named Plaintiff Cayla Lunemann.  (*See* Doc. No. 1.)  Plaintiff alleges that Defendant Kooma III LLC violated the minimum wage provisions of the FLSA and the Pennsylvania Minimum Wage Act ("PMWA").  (*Id.*)  On May 13, 2024, the Court granted Plaintiff's unopposed motion for preliminary approval of the Class Action settlement.  (Doc. Nos. 27, 28.)  Presently before the Court is Plaintiff's Unopposed Motion for Final Approval of the Class Action Settlement (Doc. No. 30) and for Attorney's Fees and Service Award (Doc. No. 29) (the "Motions").  For the reasons below, the Motions are granted.

### I.      BACKGROUND

#### A.  Procedural History

Because we write primarily for the parties, we provide only limited background.  A fuller recitation of the relevant facts is available in the Court's memorandum regarding preliminary settlement approval.  (Doc. No. 27.)  As relevant to this opinion, the background is as follows.

Plaintiff Cayla Lunemann worked as a server at Kooma Asian Fusion & Sushi Bar ("Kooma"), located in King of Prussia, Pennsylvania.[1]  (Doc. No. 1 at ¶¶ 7, 9.)  In September 2023, Plaintiff filed this lawsuit individually and on behalf of others similarly situated, alleging that Defendant improperly shared the servers' tips with the sushi chefs at Kooma because the chefs' role consisted almost exclusively of food preparation duties, rather than customer-facing duties.  (Doc. No. 1 at ¶¶ 12, 13.)  The complaint alleges both collective and class allegations—Plaintiff brought collective allegations under the FLSA and class allegations under the PMWA.  (*Id.* at ¶¶ 16, 17.)  Shortly after this matter was filed, the parties successfully reached a settlement in principle on January 9, 2024, thanks to the assistance of the Honorable Magistrate Judge Carol Sandra Moore Wells.  (Doc. No. 21 at 6.)

Plaintiff filed an unopposed motion on March 8, 2024 seeking an order granting preliminary approval of the class action settlement.  (*See generally* Doc. No. 20.)  The Court held a hearing on the Motion on April 23, 2024.  (Doc. No. 24.)  The Court held a follow up telephonic status conference on the same day to address additional questions (Doc. No. 25), and Plaintiff filed a supplemental brief in further support of the motion for preliminary approval (Doc. No. 26).  The Court granted the motion for preliminary class settlement approval on May 13, 2024, and authorized notice of the settlement to the class.  (Doc. Nos. 27, 28.)  The Court reserved approval of the collective until the final approval stage in this hybrid action.  (*See* Doc. No. 27 at 3–5.)

Following the Court's grant of preliminary approval, on May 28, 2024, Plaintiff's counsel mailed to each class member a detailed notice describing the litigation and settlement. (Doc. No. 30-4 at 5; Doc. No. 30-2; Doc. No. 30-1 at 13–15 (Notice).)  Plaintiff received no

---

[1] Plaintiff ended her employment with Defendant in January 2023.  (Doc. No. 1 at ¶ 9.)

requests for exclusion or objections to its terms.  (Doc. No. 30-2 at ¶ 5.)

On June 17, 2024, Plaintiff filed an unopposed motion for approval of attorney's fees ($33,750, including $518.62 in costs), and a service award for herself ($3,000).  (Doc. No. 29.) On July 22, 2024, Plaintiff filed an unopposed motion for final approval of the parties' Settlement Agreement.  (Doc. No. 30.)  The Court held a fairness hearing on August 1, 2024. (Doc. No. 31.)  No members of the class/collective attended the hearing.

### B.  Settlement Agreement[2]

The settlement class consists of all individuals who, during any time between September 22, 2020 and December 10, 2023, worked as servers at Kooma Asian Fusion & Sushi Bar in King of Prussia, PA.  (Doc. No. 30-4 at 4.)  The parties agree that the class covers 44 individuals (including Plaintiff), as identified in Exhibit A to the Settlement Agreement (Doc. No. 30-1). (Doc. No. 30-4 at 4.)

The settlement requires Defendant to make a maximum payment of $112,500, plus any associated employer-side taxes.  (Doc. No. 30-1 at ¶ 2.)  The settlement contemplates that $33,750 of the fund (equaling 30% of the total settlement fund) be paid to class counsel for fees and costs, and $3,000 of the fund be paid to Plaintiff as a service award.  (*Id.* at ¶¶ 11, 12.)  Any disapproved amounts from the attorney's fees and service award will enhance the class members' pre-tax payments.  (*Id.*)  If the above payments are approved, the class members will share in $75,750 (subject to tax withholdings).  (Doc. No. 30-4 at 4.)  Each class members' share of the $75,750 will be calculated based on the class members' *pro rata* percentage share of the estimated $200,496 owed to the class members.  (*Id.*)  This is a non-reversionary settlement, meaning that no portion of the $112,500 settlement fund will be returned to Defendant.  (*Id.* at

---

[2] Unless otherwise noted, terms such as "class" have the meanings ascribed in the parties' Class Action Settlement Agreement.  (*See* Doc. No. 30-1.)

5.)  Any proceeds associated with uncashed checks will be donated to the Pennsylvania Interest on Lawyers' Trust Accounts ("IOLTA") Board.  (Doc. No. 30-1 at ¶ 10.)  To receive a settlement payment, class members are not required to complete a "claim form" or any other document.  (*Id.* at ¶¶ 1, 10.)

As noted above, on May 28, 2024, Plaintiff's counsel mailed to each class member a detailed notice describing the litigation and settlement.  (Doc. No. 30-4 at 5; Doc. No. 30-2; Doc. No. 30-1 at 13–15 (Notice).)  The notice form was individualized to inform each class member of their expected payout amount and the manner by which such amount was calculated.  (Doc. No. 30-4 at 5.)  In addition, the notice form explained how class members could exclude themselves from or object to the settlement; described the scope of the release; identified class counsel; informed class members as to the amount of fees and expenses sought by class counsel; and informed class members of the time and location of the final fairness hearing.  (*Id.*)

Since the May 28, 2024 mailing, nine notices were returned as undeliverable.  (Doc. No. 30-2 at ¶ 4.)  Of these, one notice was remailed to the forwarding address printed on the returned envelope and the remaining eight notices were checked in the Accurint database and remailed to any new addresses found.  (*Id.*)  No objections or opt-out requests have been received.  (*Id.* at ¶ 5.)

If this settlement is approved, class members will be bound by a release that is limited to the instant litigation.[3]  (Doc. No. 30-4 at 6.)  Specifically, the release is limited to:

> [A]ll legal or equitable claims, whether known or unknown, arising prior to December 10, 2023, and asserted in or reasonably related to the Action, including, but not limited to, all such claims arising under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1

---

[3] Ms. Lunemann, the named Plaintiff, will be subject to a broader release.  (*See* Doc. No. 29-2 at 5; Doc. No. 30-1 at 17–24.)

*et seq.*, or any other federal, state, or local statute, regulation, ordinance, or common law theory seeking unpaid wages or any associated penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable or other relief.

(Doc. No. 30-1 at ¶ 1.)

## II.    Final Certification of the Rule 23 Class for Settlement Purposes

### A.  Legal Standard

The Court may certify class actions for the sole purpose of settlement. *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 476 (E.D. Pa. 2010) (citing *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786 (3d Cir. 1995)).  When the district court is presented with a class settlement agreement, the court must first determine whether the requirements for class certification under Rule 23(a) and (b) are met, and separately determine that the settlement is fair, reasonable, and adequate.  *Great Arrow Builders*, 2:20-CV-00800-CCW, 2022 U.S. Dist. LEXIS 32051, at *3–4 (W.D. Pa. Feb. 23, 2022) (citing *In re Nat'l Football Players Concussion Injury Litig.*, 775 F.3d 570, 581 (3d Cir. 2014)).

Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure give the requirements for certifying a class.  Under Rule 23(a), a class action is allowable only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015) ("All potential classes must initially satisfy four prerequisites to be certified: (1) numerosity, (2)

5

commonality, (3) typicality, and (4) adequacy of representation.").  Additionally, the class must be currently and readily ascertainable based on objective criteria.  *Marcus v. BMW of N. Am. LLC*, 687 F.3d 583, 593 (3d Cir. 2012).

If the Rule 23(a) and ascertainability conditions are met, then a case may proceed as a class action if one of the conditions of Rule 23(b) is also satisfied.  Here, Plaintiff seeks certification for a class under Rule 23(b)(3), which requires that "the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *see also Reyes*, 802 F.3d at 482 (explaining that the plaintiff must demonstrate "predominance and superiority" for certification under Rule 23(b)(3)).

### B.  Analysis

Plaintiff proposes a class of "all individuals who, during any time between September 22, 2020 and December 10, 2023, worked as servers at Kooma Asian Fusion & Sushi Bar in King of Prussia, PA."  (Doc. No. 30-4 at 4; Doc. No. 30-1 at ¶ 1.)  The class is ascertainable and meets all six requirements of Rules 23(a) and 23(b).  We will address each in turn.

#### 1.  Ascertainability

To demonstrate ascertainability, the plaintiff has the burden of showing, by a preponderance of the evidence, that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether class members fall within the class definition.'"  *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (citing *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013)).  The class here is clearly ascertainable because the parties were able to determine the exact number and identities

of the relevant servers using Defendant's records, including payroll data, of its past and present employees.  (Doc. No. 30-4 at 3; *see also* Doc. No. 21 at 6.)

### 2.  Rule 23(a) Requirements

*Numerosity*

While "[t]here is no magic number of class members needed for a suit to proceed as a class action," the Third Circuit has held that "numerosity is generally satisfied if there are more than 40 class members."  *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 426 (3d Cir. 2016).  Here, the proposed class is sufficiently numerous because it consists of 44 people, including the named Plaintiff.  (Doc. No. 30-1 at 11.)  The Court is satisfied that this is enough people to render joinder impracticable.  Fed. R. Civ. P. 23(a).

*Commonality*

As the Third Circuit has explained, a "class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *In re Nat'l Football League Players*, 821 F.3d at 426–27 (quoting *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013)).  It is "easy enough" to meet the requirement, provided all members of the class have claims that are capable of class-wide resolution.  *Id.*  Commonality is met in this case because each member of the proposed class was subject to the same conduct by Defendant—the policy of sharing servers' tips with the sushi chefs even though the sushi chefs allegedly did not have customer facing duties—and claims that such conduct violated state and national law.  (Doc. No. 30-4 at 13–14.)

*Typicality*

There is a "'low threshold' for typicality"; provided "the interests of the class and the class representative are aligned," courts will find typicality even when class members' claims are

only legally similar, and not factually similar.  *In re Nat'l Football League Players*, 821 F.3d at 427–28 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182–83 (3d Cir. 2001)).  Here, the named Plaintiff's claims are both legally and factually similar to those of the class because all class members worked for Defendant as servers, were paid subject to the tip credit, and shared tips with sushi chefs—and the legality of this practice under the PMWA constitutes a shared legal claim.

### *Adequacy of Representation*

The adequacy of representation requires the Court to examine both "the qualifications of class counsel and the class representatives."  *Id.* at 428.

First, when considering the adequacy of class representatives, courts seek "to root out conflicts of interest within the class" and to "uncover conflicts of interest between the named parties and the class they seek to represent."  *Id.* at 428, 430 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).  "A class representative must represent a class capably and diligently," but this is a low bar: "'a minimal degree of knowledge' about the litigation is adequate."  *Id.* at 430 (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)).  "[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class."  *In re Cmty. Bank of N. Va.*, 795 F.3d at 393 (quoting *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012)).  Here, this requirement is satisfied because Plaintiff was a server subject to Defendant's challenged policy, and Plaintiff's only legal claims are asserted on behalf of the class.  She has no other claims or interests.  (*See* Doc. No. 30-4 at 14.)

Second, with respect to the adequacy of class counsel, the important factors are whether the attorneys "(1) possessed adequate experience; (2) vigorously prosecuted the action; and (3)

acted at arm's length from the defendant." *In re GMC*, 55 F.3d at 801.  The Third Circuit has indicated that courts should consider the non-exhaustive list of factors in Rule 23(g) for appointing counsel in determining the adequacy of representation.  *See In re Nat'l Football League Players*, 821 F.3d at 429.  Those factors include counsel's work in the instant class action, experience in handling class actions or other kinds of complex litigation, knowledge of the applicable laws, and resources available for representing the class.  Fed. R. Civ. P. 23(g)(1)(A).  Additionally, the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B). Here, the class counsel—Peter Winebrake, Esquire, and Michelle Tolodziecki, Esquire, of Winebrake & Santillo, LLC—are qualified to "fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Plaintiff's attorneys have substantial experience handling class litigation under US wage laws.  (*See* Doc. No. 21 at 11; Doc. No. 20-2 at ¶¶ 3, 4, 7–13.)  The attorneys have spent more than 109 hours diligently pursuing this matter by promptly propounding discovery, working with Defendant's counsel to resolve conflict without the Court's intervention, and analyzing the potential damages owed to the class.  (Doc. No. 21 at 10–13; Doc. No. 29-1 at ¶ 7.)  Last, the parties worked with Magistrate Judge Wells to facilitate arms' length negotiations, which weighs in favor of finding adequacy.  *See Fulton-Green v. Accolade, Inc.*, Civil Action No. 18-274, 2019 WL 4677954, at *6 (E.D. Pa. Sept. 24, 2019) (collecting cases).  Thus, the Court finds that the proposed class's interests have been advanced by experienced, dedicated counsel, working at arms' length from Defendant in accordance with Rule 23(a)(4).

***

In sum, the Court finds that the Rule 23(a) conditions for class certification are

9

met here.

### 3.   Rule 23(b)(3) Requirements

As discussed above, in addition to meeting the requirements of Rule 23(a), the class must also satisfy Rule 23(b)(3), which requires the Court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  The Court addresses the predominance and superiority requirements in turn.

***Predominance***

The key issue under the predominance factor is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  The Third Circuit has counseled that courts should be "more inclined to find the predominance test met in the settlement context."  *In re Nat'l Football League Players*, 821 F.3d at 434 (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 304 n.29 (3d Cir. 2011) (en banc)).  Here, predominance is satisfied.  The claims of all members of the class rely on common questions of fact:  the extent to which the sushi chefs at Kooma engaged in customer-facing work entitling them to share tips with servers.  (Doc. No. 21 at 4–5.)  Likewise, each class member's claim raises an identical question of law:  whether Defendant's policy of sharing servers' tips with sushi chefs violated the PMWA.  (Doc. No. 30-4 at 15.)  Taken together, these common questions of law and fact predominate over individual factual questions, such as the number of hours each server worked and the extent to which each server was denied the full amount of tips earned.

*Superiority*

Lastly, the parties have demonstrated the class action mechanism is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  When evaluating this requirement, Rule 23(b)(3) directs courts to consider "the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action."  *In re Nat'l Football League Players*, 821 F.3d at 435 (citing Rule 23(b)(3)(A)–(D)).  Superiority can be satisfied where the settlement prevents "duplicative lawsuits and enables fast processing of a multitude of claims."  *Id.* (quoting *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 382 (E.D. Pa. 2015)); *see also Sullivan*, 667 F.3d at 312.

Here, Plaintiff's counsel estimates that the average class member's maximum alleged unpaid wages is only $4,557.  (Doc. No. 30-4 at 16.)  Thus, the "relatively small size of the claims each class member is entitled to makes it practically difficult—if not impossible—for individual Class Members to control their own suits."  *Stechert v. Travelers Home & Marine Ins. Co.*, No. 17-0784-KSM, 2021 U.S. Dist. LEXIS 218071, at *18 (E.D. Pa. Nov. 9, 2021).  It is also desirable to concentrate litigation in this forum.  The Court recognizes that there are 44 class members (including the named Plaintiff), and the parties have not specified how many class members are located in the Eastern District of Pennsylvania.  (Doc. No. 21.)  Nonetheless, because all the class members worked as servers at Defendant's restaurant in King of Prussia, PA, which is in the Eastern District, we find that it is desirable to concentrate litigation in this Court.

Moreover, since the Court certifies the class for settlement purposes, the Court need not consider whether there would likely be difficulties in managing the class action. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.") (citation omitted). Accordingly, superiority is met in this case.

***

For these reasons, we find that the requirements of Rules 23(a) and 23(b)(3) are satisfied, and the Court certifies the class.

### III.    Appointment of Class Counsel

For the reasons set forth above, *see supra* Part II.B.2, the Court finds that Peter Winebrake and Michelle Tolodziecki of Winebrake & Santillo, LLC have the ability and resources to "fairly and adequately represent the interests of the class." Accordingly, they will be appointed as class counsel.

### IV.    Adequacy of Class Notice

Because the Court has granted final certification to the class, we must now evaluate the adequacy of notice to the class members. *Fein v. Ditech Fin., LLC*, No. 5:16-cv-00660, 2017 WL 4284116, at *6 (E.D. Pa. Sept. 27, 2017). For class notice to be adequate, it must meet two requirements. First, Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Second, principles of due process "require[ ] that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *In re Nat'l Football League*

*Players*, 821 F.3d at 435 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  The notice documents must provide a detailed description of the settlement, the circumstances leading to it, and the consequences of objecting or opting out.  *See In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 310–12 (3d Cir. 2004).

In granting preliminary approval to the parties' Settlement Agreement, the Court found that the notice plan met these requirements.  (*See* Doc. No. 27 at 20–21.)  Now that the plan has been executed, the Court finds no reason to change that conclusion.  Pursuant to the Settlement Agreement and the Court's May 13, 2024 Order (Doc. No. 28 at ¶ 11)—which required Defendant to send to Plaintiff's counsel an Excel spreadsheet containing each class member's name and last known residential address (Doc. No. 30-1 at ¶ 7)—on May 28, 2024, Plaintiff's counsel mailed individualized notices to all class members listed in Exhibit A to the Class Action Settlement Agreement.  (Doc. No. 30-2 at ¶ 3; Doc. No. 30-1 at 11.)  Since the initial mailing, nine notices were returned as undeliverable.  (*Id.* at ¶ 4.)  Of these, one notice was remailed to the forwarding address printed on the returned envelope and the remaining eight notices were checked in the Accurint database and remailed to any new addresses found.  (*Id.*)  This supports the proposition that a large portion of the class received the notice through the mail.  The Court therefore finds that that notice via first-class mail met the Rule 23 and due process requirements, because it was the best notice practicable under the circumstances and was reasonably calculated to provide actual notice to all class members.  *See, e.g.*, *Wood v. Saroj & Manu Inves. Phila. LLC*, No. 19-2820-KSM, 2021 WL 1945809, at *4–5 (E.D. Pa. May 14, 2021) (allowing notification via direct mail alone); *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 173 (N.D. Cal. 2019) (same); *Lane v. Campus Fed. Credit Union*, No. 16-CV-37-JWD-EWD, 2017 WL 3719976, at *10 (M.D. La. May 16, 2017) (same); *Thieriot v. Celtic Ins. Co.*, No. C 10-

04462 LB, 2011 WL 109636, at *6 (N.D. Cal. Jan. 13, 2011) (same).

## V.     Certification of the FLSA Collective

Next, Plaintiff also brings claims that Defendant violated minimum wage provisions under the FLSA.  (Doc. No. 1.)  The FLSA allows an employee alleging an FLSA violation to bring an action on "behalf of himself . . . and other employees similarly situated."  29 U.S.C. § 216(b).  This is known as a "collective action."[4]

To proceed with final certification of the collective, the plaintiff has the burden of establishing that the members of the proposed collective are "similarly situated" within the meaning of § 216(b).  *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 85 (3d Cir. 2017); *Halle*, 842 F.3d at 226; *Zavala*, 691 F.3d at 537.  Courts consider several factors at this stage, including "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment."  *Zavala*, 691 F.3d at 536–37. The Third Circuit "endorses an ad hoc approach to this analysis, considering all

---

[4] Courts have traditionally approved FLSA collectives in a two-step process.  *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012); *Wright v. Lehigh Valley Hosp.*, Civil Action No. 10-431, 2010 WL 3363992, at *2 (E.D. Pa. Aug. 24, 2010).  But, the Third Circuit has also explained that the first step, conditional certification, "is not really a certification."  *Zavala*, 691 F.3d at 536.  Rather, "[i]t is actually the district court's exercise of its discretionary power to facilitate the sending of notice to potential class members and is neither necessary nor sufficient for the existence of a representative action under the FLSA."  *Id.* (cleaned up).  Thus, "the sole consequence of conditional certification is the dissemination of court-approved notice to potential collective action members."  *Halle v. W. Allegheny Health Sys., Inc.*, 842 F.3d 215, 224 (3d Cir. 2016) (cleaned up).  Because the Third Circuit has noted that the first step of the certification test is "fairly lenient," *Zavala*, 691 F.3d at 535, the Court finds that the individualized notice previously disseminated to the collective satisfies due process concerns, and the Court may certify the collective in a "one-step approval."  *See Brown v. Kadence Int'l, Inc.*, No. 22-1097-KSM, 2023 WL 2614587, at *3–5 (E.D. Pa. Mar. 23, 2023) (granting final approval of an FLSA collective in a one-step process after finding absence of due process concerns); (*see also* Doc. No. 27 at 3–5 (discussing the Court's decision to permit a one-step approval process for certification of the FLSA collective because the parties "provided a clear and comprehensive explanation of the [FLSA] release in the proposed notice").)

relevant factors and making a determination on a case-by-case basis as to whether the named plaintiffs have satisfied this burden by a preponderance of the evidence." *Halle*, 842 F.3d at 226.

Here, all four factors weigh in favor of conditionally certifying the collective. First, all 44 members of the collective worked for Defendant's Kooma restaurant as servers. (Doc. No. 30-4 at 17–18.) Next, all members of the collective allege that Defendant improperly shared the servers' tips with sushi chefs, seeking repayment of these tips. (*Id.* at 18.) As such, they all advance similar claims and seek the exact same form of relief. Finally, since all Plaintiffs were servers working in the same restaurant earning $2.83 per hour (Doc. No. 10 at ¶ 10), they have similar salaries and circumstances of employment (Doc. No. 30-4 at 18). For these reasons, the Court grants final certification of the collective.

## VI.    Final Approval of the Settlement Agreement

Having granted final certification of the Rule 23 class and the FLSA collective, the Court now evaluates the fairness of the proposed settlement.

### A. Class Action Approval

Under Federal Rule of Civil Procedure 23(e), a court may approve a class action settlement only after "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).[5] District courts have discretion to decide whether to grant final approval to a proposed settlement. *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). Settlements are entitled to "an

---

[5] The Court is mindful that Federal Rule of Civil Procedure 23(e)(2) enumerates certain considerations for approving a class action settlement that substantially overlap with the *Girsh* factors. *See Hall v. Accolade, Inc.*, No. 17-3423, 2020 U.S. Dist. LEXIS 52632, at *19 n.12 (E.D. Pa. Mar. 24, 2020) ("The *Girsh* factors predate the recent revisions to Rule 23, which now explicitly identifies the factors that courts should apply in scrutinizing proposed class settlements, and the earlier discussion in *Girsh* substantially overlaps with the factors now identified in Rule 23."). Since the Court previously examined the Rule 23(e) factors at the preliminary settlement approval stage (*see* Doc. No. 27 at 15–19), and since those factors substantially overlap with the *Girsh* factors discussed *infra*, the Court need not address the 23(e) factors again here.

initial presumption of fairness" if "the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re GMC*, 55 F.3d at 785. However, when, as in this case, the parties seek settlement approval and final class certification simultaneously, the Court must examine the fairness of the settlement agreement "even more scrupulous[ly] than usual." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004).

Here, we are satisfied that the proposed settlement meets the criteria for final approval. The Settlement Agreement is entitled to an initial presumption of fairness because (1) the parties negotiated the settlement at arms' length with the assistance of Magistrate Judge Wells (Doc. No. 30-4 at 4), (2) prior to reaching settlement, experienced class counsel thoroughly investigated the class members' claims and calculated the total possible damages using records obtained from Defendant (Doc. No. 20 at 13–14), (3) class counsel, as described above, have significant experience in similar litigation (*see supra* Section II.B.2), and (4) no class members have objected to the settlement. Thus, the *GMC* factors weigh in favor of preliminary approval, such that an initial presumption of fairness attaches.

Although the Settlement is entitled to an initial presumption of fairness, we must consider the following *Girsh* factors to confirm that the settlement is fair, reasonable and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risk of establishing damages; (6) risk of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.3d at 157 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.

1974)) (cleaned up).

The first factor—complexity, expense and likely duration of the litigation—weighs in favor of granting approval because fully litigating the class claims would require the parties to engage in complex analysis regarding whether the sushi chefs engaged in customer-facing duties and were entitled to share the servers' tips.  This litigation is still in the relatively early stages, and if settlement is not approved, the parties would have to conduct additional extensive discovery, brief contested certification of the class and collective, file motions for summary judgment, and prepare for a trial.  (Doc. No. 30-4 at 7–8.)

The second factor—the reaction of the class to the settlement—also weighs in favor of approval because no member of the class opted out of the settlement or objected to it.  (*Id.* at 8.)

The third factor—stage of the proceedings and the amount of discovery completed—considers whether "counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 537.  In this case, the parties conducted discovery to determine the total number of servers who worked for Defendant and the total possible recovery they could recover.  (Doc. No. 21 at 6.)  Counsel for Plaintiff also explains that other courts have determined that questions regarding whether sushi chefs are entitled to share tips is a question of fact that must go to a jury, suggesting that Plaintiff had an understanding of how the case was likely to proceed.  (*Id.* at 5.)  Thus, the Court finds that counsel had an adequate appreciation of the merits of the case before negotiating.

The fourth and fifth factors—risks of establishing liability and damages—also counsel in favor of approving the settlement.  As discussed above, Plaintiff's counsel demonstrates that there is a risk of establishing liability, and in turn, damages, because there is a factual dispute as to whether the sushi chefs at Defendant's restaurant engaged in enough customer interaction to

17

warrant the sharing of tips.  (*Id.*)  Plaintiff's counsel points to case law, a U.S. Department of Labor opinion letter, and the Defendant's affirmative defense suggesting that there is risk in establishing liability in this case on this ground.  (Doc. No. 30-4 at 3, 8.)  Thus, the Court finds that the fourth and fifth *Girsh* factors weigh in favor of approving the settlement.

The sixth *Girsh* factor—the likelihood of maintaining class certification if the action were to proceed to trial—weighs in favor of approval because there "will always be a 'risk' or possibility of decertification."  *In re Prudential Ins. Co. Am. Sales Pracs. Litig.*, 148 F.3d 283, 321 (3d Cir. 1998).

The seventh *Girsh* factor—the likelihood of Defendant to withstand a greater settlement—is "most clearly relevant where a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement."  *In re Nat'l Football League Players*, 307 F.R.D. at 394 (quoting *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011)).  "However, when there is no 'reason to believe that [d]efendants face any financial instability[,] . . . this factor is largely irrelevant.'"  *Id.*  Here, there is no reason to believe Defendant is financially unstable, and thus whether it could withstand a larger judgment weighs neither in favor of nor against approving the Settlement.

Finally, the eighth and ninth factors—the range of reasonableness of the settlement fund in light of the best possible recovery and in light of all the attendant risks of litigation—ask the Court to consider "whether the settlement represents a good value for a weak case or a poor value for a strong case."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 538.  Here, the Settlement is reasonable in light of the best possible recovery and attendant risks of litigation. Of the total possible $200,496 owed to 44 servers, Defendant will pay $112,500 plus any

associated employer-side taxes, and the class members will share $75,750 after the attorney's fees and the proposed named representative service award are deducted. (Doc. No. 30-4 at 3–4.) The $112,500 settlement amounts to 56% of the total alleged unpaid wages. (*Id.* at 9.) This amount compares favorably to other settlements in overtime/wage suits approved in this District. *See, e.g.*, *Solkoff v. Pa. State Univ.*, 435 F. Supp. 3d 646, 655 (E.D. Pa. 2020) ("[T]he relevant settlement amount is the total amount of the settlement even though the total settlement amount includes attorneys' fees."); *Martinez v. IFA Grp., Inc.*, No. 2:19-cv-02247-JDW, 2019 U.S. Dist. LEXIS 200116, at *6 (E.D. Pa. Nov. 19, 2019) (holding that the plaintiff's settlement for about "half of his claimed [overtime] wages" was reasonable); *Myers v. Jani-King of Phila., Inc.*, No. 09-1738, 2019 U.S. Dist. LEXIS 144929, at *24–25 (E.D. Pa. Aug. 26, 2019) (approving settlement representing "between 20% and 39% of the maximum damages' calculations" in light of the risks the plaintiffs would face if they proceeded to trial). As discussed above, given the undeniable risks with continuing the litigation and the amount recovered, discussed *supra*, the final two factors both weigh in favor of approval.

* * *

Thus, the Class Action Settlement Agreement is fair, reasonable, and adequate, and does not otherwise reveal any deficiencies. It is entitled to a presumption of fairness, and that presumption is supported by the *Girsh* factors, eight of which weigh in favor of approval and one of which is neutral.

### B. FLSA Settlement Approval

Because the settlement resolves both the PMWA and FLSA claims, it must not only be "fair, reasonable, and adequate" under Rule 23(e) of the Federal Rules of Civil Procedure, but it must also be a "a fair and reasonable resolution of a bona fide dispute over FLSA provisions."

*Williams v. Securitas Sec. Servs. USA*, No. 10-7181, 2012 U.S. Dist. LEXIS 160092, at *5 (E.D. Pa. Nov. 8, 2012).  In determining whether to approve settlement of an FLSA action, courts consider (1) whether "the settlement concerns a 'bona fide dispute'"; (2) whether the settlement is "fair and reasonable for the employees"; and (3) whether the settlement "furthers the FLSA's implementation in the workplace."  *See DiFlavis v. Choice Hotels Int'l, Inc.*, Civil Action No. 18-3914, 2020 WL 6728806, at *2 (E.D. Pa. Nov. 16, 2020) (internal citations omitted).

In determining whether there is a bona fide dispute between the employees and the employer, courts consider whether the dispute involves legal or factual issues, "such as FLSA coverage or computation of back wages."  *Lynn's Food Stores, Inc. v. U.S. Dep't of Lab.*, 679 F.2d 1350, 1354 (11th Cir. 1982); *see also Bettger v. Crossmark, Inc.*, Civil Action No. 1:13-CV-2030, 2015 WL 279754, at *4 (M.D. Pa. Jan. 22, 2015) ("An agreement resolves a bona fide dispute when there is some doubt as to whether the plaintiff would succeed on the merits at trial.").  A bona fide dispute exists when "the dispute . . . fall[s] within the contours of the FLSA and there [is] evidence of the defendant's intent to reject or actual rejection of th[e] claim when it is presented."  *Kraus*, 155 F. Supp. 3d at 530.  Here, as discussed *supra*, this matter involves a bona fide dispute of whether the sushi chefs were entitled to share servers' tips, based on the degree of customer interaction and whether the sushi chefs performed customer service functions.  *See Fiumano v. Metro Diner Mgmt. LLC*, No. 17-645, 2023 WL 1805135, at *11 (E.D. Pa. Feb. 7, 2023).

In determining whether a settlement is fair and reasonable, courts in the Third Circuit use the factors identified by the Third Circuit in *Girsh v. Jepson*, discussed above in the context of determining whether a Rule 23 class action settlement is fair and reasonable.  *See DiFlavis*, 2020 WL 6728806, at *3; *In re Chickie's & Pete's Wage & Hour Litig.*, 2014 WL 911718, at *2–3.

20

*But see Kraus*, 155 F. Supp. 3d at 523 n.3 (observing that some of the *Girsh* factors do not apply in the context of FLSA settlements and that "though *Girsh* may suggest the type of factors to be considered in assessing a private FLSA settlement, courts need not fall into the alluring trap of mechanically applying *Girsh* simply because it is the court's duty to assess whether the proposed agreement is fair and reasonable.").  As discussed *supra*, the Court finds that the *Girsh* factors weigh in favor of approving the PMWA class settlement, and the analysis is the same here with the FLSA collective settlement.

As for whether the settlement advances the purposes of the FLSA, courts consider factors such as whether the settlement agreement is narrowly tailored such that it resolves only the employees' wage and hour claims and whether the agreement contains a confidentiality clause that would frustrate the FLSA's "informational objective." *In re Chickie's*, 2014 WL 911718, at *3; *DiFlavio*, 2020 WL 6728806, at *7–8.  Here, the settlement advances the purposes of the FLSA because the Release provisions are not impermissibly broad in that it limits the release "strictly . . . to wage and hour claims," and the Settlement Agreement does not contain a confidentiality clause.  (*See generally* Doc. No. 30-4 at 11–12.)

***

Thus, the Court finds that the Settlement Agreement's terms do not impermissibly frustrate the FLSA's implementation, and the Settlement Agreement is a fair and reasonable resolution of a bona fide dispute.

* * * * *

In sum, the Settlement Agreement is fair, reasonable, and adequate, and does not otherwise reveal any deficiencies.

21

**VII.    Approval of Service Payment**

The Court approves a service award to Ms. Lunemann, but reduces the requested $3,000.00 service award to $2,500.00. Service payments are a common feature of collective action settlements. *See Sullivan*, 667 F.3d at 333 n.65. These payments serve "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of [the] litigation and to reward the public service of contributing to the enforcement of mandatory laws." *Id.* (cleaned up). "There is substantial precedent from [the Third] Circuit supporting approval of incentive payments." *See Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 353–54 (D.N.J. Oct. 20, 2020) (collecting cases).

"Factors that courts consider in deciding to grant incentive awards include: the risk to the plaintiff in commencing litigation, both financially and otherwise; the notoriety and/or personal difficulties encountered by the representative plaintiff; the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; the duration of the litigation; and the plaintiff's personal benefit (or lack thereof) purely in his capacity as a member of the class." *Young v. Tri Cnty. Sec. Agency, Inc.*, No. 13-5971, 2014 WL 1806881, at *8 (E.D. Pa. May 7, 2014) (citing *In re Plastic Tableware Antitrust Litig.*, Civ. A. No. 94–3564, 1995 WL 723175, at *2 (E.D. Pa. Dec. 4, 1995)).

Here, Ms. Lunemann requests a $3,000.00 service award. She argues that this award is reasonable because she has been a "dedicated, cooperative, and helpful representative of the class," and has "consistently maintained contact with class counsel and participated in the proceedings," including personal participation in the settlement conference before Magistrate Judge Wells. (Doc. No. 29-2 at 5; Doc. No. 20-1 at ¶ 12; Doc. No. 21 at 15 n.5.) Additionally, Ms. Lunemann has agreed to a much more comprehensive release of claims and has contributed

to the enforcement of mandatory laws by standing up for the rights of other workers notwithstanding knowledge that her claims would be a matter of public record. (*Id.*)

The Court agrees that Ms. Lunemann has been instrumental in initiating this suit to pursue vindication of federal and state law claims on behalf of herself and others in similar circumstances who may not have been willing to take the risk to pursue litigation. The Court commends Ms. Lunemann for her efforts in maintaining contact with counsel, participating in mediation, and attending the Court's hearing on final settlement approval. However, the Court finds that a modest reduction of the proposed service award is appropriate because this case settled at a relatively early stage in the litigation, Ms. Lunemann did not have to take part in a deposition, did not attend the Court's hearing on the preliminary settlement approval, and her counsel's time entries submitted to the Court reflect that the total time she met and spoke with her attorneys and participated in mediation was about 14 hours. (Doc. No. 29-1 at 5–7.) In light of the fact that the service award she seeks constitutes a fairly significant 2.67% of the total settlement fund (Doc. No. 29-2 at 5), the Court finds that a modest $500 reduction is appropriate, bringing her award to $2,500.00, which constitutes 2.2% of the settlement fund.[6] *See Wood*, 2021 WL 1945809, at *10 (approving service award which amounted to about 1% of the total recovery); *Johnson v. City of Philadelphia*, No. 19-4264-KSM, 2021 WL 1387503, at *7 (E.D. Pa. Apr. 13, 2021) (granting incentive payment which constituted about 1.8% of collective's total recovery); *Brown*, 2023 WL 2614587, at *10 (approving service award which represented

---

[6] Plaintiff argued during the Court's hearing on final approval that *Kyem v. Merakey*, 2:19-cv-0577-KSM, 2022 U.S. Dist. LEXIS 24657, at *16–17 (E.D. Pa. Feb. 11, 2022) is instructive because the named plaintiff there received a $3,000 award, which amounts to 2.5% of the settlement fund. However, the Court notes that the *Kyem* case involved much more complicated facts and legal claims, and emphasizes that, unlike Ms. Lunemann, the named plaintiff there was still employed by the defendants at the time he brought suit.

roughly 1% of the total recovery). *But see Young*, 2014 WL 1806881, at *8 (approving service award of approximately 3.5% of the class's total recovery).

## VIII.   Approval of Attorney's Fees and Costs

Plaintiff also requests approval of attorney's fees in the amount of $33,750.[7]  (Doc. No. 29-2.)  In the Third Circuit, courts generally favor using the percentage-of-recovery method to compensate counsel in wage-and-hour cases brought under the FLSA or state wage and hour laws as a collective or class action.  *See Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 765 (E.D. Pa. 2016).  This is because the percentage-of-recovery method, as opposed to compensating attorneys for the number of hours they devote to a case, encourages efficiency and "rewards counsel for success and penalizes it for failure."  *In re Prudential*, 148 F.3d at 333 (quoting *In re GMC*, 55 F.3d at 821).  In determining whether the requested fees are reasonable under the percentage-of-recovery method, the Court considers seven factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; and (7) awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).  The Third Circuit has also recommended that courts considering awards of attorney's fees using the percentage-of-recovery method perform a lodestar cross-check, which requires the court to compare the attorney's recovery under the percentage-of-recovery method with the so-called "lodestar."  *Id.* The lodestar is calculated by "multiplying the number of hours [the attorney] reasonably worked on a client's case by a reasonable hourly billing rate for such services given the geographical

---

[7] This figure includes $518.62 in litigation costs, such as court filing and service fees, as well as postage attributed to mailing notices to the class.  (Doc. No. 29-2 at 1.)

area, the nature of the services provided, and the experience of the lawyer." *Id*.

Here, Plaintiff seeks $33,750 in attorney's fees, which amounts to 30% of the $112,500 settlement fund.  (Doc. No. 29-2 at 1.)  When deducting the amount by the $518.62 in litigation costs, which is factored into Plaintiff's requested fee, Plaintiff is left with $33,231.38 in attorney's fees, which amounts to 29.5% of the settlement fund.  (Doc. No. 29-2 at 3.)  The Court concludes based on the following analysis of the *Gunter* factors and a lodestar cross-check that this request is reasonable.

The first factor, the size of the settlement fund and the number of people benefitted by it, weighs in favor of approval because counsel's efforts have led to the recovery of $112,500 on behalf of a class/collective comprising of 44 people, which constitutes a substantial 56% of the total possible recovery.  (Doc. No. 30-4 at 4.)  *See also Wood*, 2021 WL 1945809, at *11 (approving 33% attorney's fee award in class/collective action with total recovery of $250,000 for a class/collective comprising of 532 people).

The second factor, the presence or absence of substantial objections by the class/collective, weighs in favor of approval because no objections have been received.  (Doc. No. 29-2 at 2.)

The third factor, the skill and efficiency of the attorneys, also weighs in favor of approval.  As noted *supra* and in the Court's memorandum granting preliminary settlement approval, class counsel are experienced wage and hour attorneys whose efforts led to a significant recovery on behalf of the class/collective while saving time, expense, and avoiding the uncertainty of trial.  (Doc. No. 27 at 9–10, 13.)

The fourth factor, complexity and duration of the litigation, weighs in favor of litigation because, although this matter settled relatively early in the litigation, class counsel devoted over

25

100 hours to the prosecution of this case, which is a substantial amount of time. (Doc. No. 29-1 at ¶ 7.) And, the claims were factually and legally complex because they required an in-depth examination of the circumstances of the sushi chefs' role at Kooma, and whether this was sufficient to participate in the sharing of servers' tips. *See Fiumano*, 2023 WL 1805135, at *11. Accordingly, this factor weighs in favor of approval.

The fifth factor, the risk of non-payment, also weighs in favor of approval. As class counsel notes, they took this matter on a contingency basis, agreeing to take a fee only if they were successful. (Doc. No. 29-2 at 3; Doc. No. 20-2 at ¶ 2.) In any contingency case, there is a risk of non-payment, and even more so in cases such as this one where Defendant has colorable defenses sounding in fact and law.

The sixth factor, amount of time devoted to the case, generally favors approval because class counsel has dedicated 109.9 hours to this litigation, which was merited by the factual and legal complexity of this hybrid class/collective action. (Doc. No. 29-1 at ¶ 7.) The Court recognizes that although counsel did not dedicate weeks and months' worth of billable hours to this case, over 100 hours is still a substantial amount of time considering that this matter settled relatively early in the litigation.

Finally, the seventh factor, awards in similar cases, weighs in favor of approval because the requested $33,750 constitutes 30% of the settlement fund. And, if considered with costs deducted from the fee award, $33,231.38 constitutes 29.5% of the settlement fund. These values are within the range seen for similar cases in this district. *See Mabry v. Hildebrandt*, No. 14-5525, 2015 U.S. Dist. LEXIS 112137, at *9 (E.D. Pa. Aug. 24, 2015) (collecting cases demonstrating the percentage of recovery award in FLSA common fund cases ranges from

roughly 20-45% in the Third Circuit); *Wood*, 2021 WL 1945809, at *11 (approving 33% attorney's fee award in class/collective action).

In sum, all seven *Gunter* factors weigh in favor of approval of the requested attorney's fee. The Court next performs a lodestar cross-check to confirm the reasonableness of that conclusion. The lodestar cross-check is an additional method used to determine if class counsel's requested fees are unreasonable—an opportunity that the Court must take advantage of to fulfill its fiduciary duties to the members of the class/collective.[8] "To determine the lodestar method's suggested total, the court multiplies the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services." *Altnor*, 197 F. Supp. 3d at 766 (quotation marks omitted).

Class counsel report that they spent a total of 109.9 hours in pursuit of this litigation, with Peter Winebrake, Esq. spending 56.2 hours at a rate of $820/hour and Michelle Tolodziecki, Esq. spending 51.2 hours at a rate of $300/hour, with an additional 2.5 hours spent on clerical work at a rate of $100/hour.[9] (Doc. No. 29-1 at ¶ 7.) The total fee lodestar thus amounts to $61,694.00, which is a lodestar multiplier of 0.54. (*Id.*) "A lodestar multiplier of less than one, like the

---

[8] The Court notes that the *Altnor* court convincingly articulated reasons to be skeptical of attorneys who claim that their higher fees are justified by a lodestar cross-check, because there are ways for attorneys to manipulate the lodestar. *Altnor*, 197 F. Supp. 3d at 767–68. However, the Court finds that in this case, the lodestar cross-check is a useful tool. Whereas the *Altnor* court concluded that the high lodestar did not outweigh the analysis of the *Gunter* factors, which counseled against granting a high-percentage fee, here, the *Gunter* factors all weigh in favor of approving the requested fees.

[9] The lodestar fee calculated with the rate of $820/hour for Peter Winebrake and $300/hour for Michelle Tolodziecki is in line with the Community Legal Services of Philadelphia ("CLS") fee schedule. (*See* Doc. No. 29-1 at ¶ 4; Doc. No. 20-2 at ¶¶ 7, 11 (stating that Winebrake graduated from law school in 1991 and Tolodziecki graduated in 2020)); *Attorney Fees*, Community Legal Services of Philadelphia, (effective January 19, 2023), https://clsphila.org/about-community-legal-services/attorney-fees/ (last accessed July 26, 2024) (suggesting that a rate of $735-850 is reasonable for attorneys with more than 25 years' experience, and $265-315 is reasonable for attorneys with 2-5 years' experience); *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) (stating that the CLS fee schedule has been cited approvingly by the Third Circuit).

lodestar multiplier here, reveals that the fee request constitutes only a fraction of the work that the attorneys billed and thus favors approval." *Altnor*, 197 F. Supp. 3d at 767 (citing *Carroll v. Stettler*, No. 10–2262, 2011 WL 5008361, at *8 (E.D. Pa. Oct. 19, 2011)).  Thus, the Court finds that the lodestar consideration also counsels in favor of approving the requested attorney's fee.

***

For these reasons, the Court will approve a payment of $33,750 to class counsel as attorney's fees, including $518.62 in litigation costs.

### IX.    Approval of Cy Pres Recipient

The parties name the Pennsylvania IOLTA Board, an organization "support[ing] the provision of civil legal services to the Commonwealth's poor and disadvantaged," as the intended *cy pres* recipient of any remaining undistributed settlement funds.  (Doc. No. 30-1 at ¶ 10); *About PA IOLTA*, PA IOLTA, https://www.paiolta.org/about-pa-iolta/.  The Settlement Agreement provides that "[a]ny check that remains uncashed 120 calendar days after the Effective Date will be forfeited by the Claimant, and the underlying funds (not including payroll taxes/withholdings ordinarily borne by Defendant) will be donated to the Pennsylvania IOLTA Board."  (Doc. No. 30-1 at ¶ 10.)

The *cy pres* doctrine "may be used to direct excess funds to a third-party for a purpose related to the class injury."  *Huffman v. Prudential Ins. Co. of Am.*, No, 10-cv-5135, 2020 U.S. Dist. LEXIS 140539, 2020 WL 4530150, at *1 (E.D. Pa. Aug. 6, 2020).  "In the normal *cy pres* scenario, parties may seek to distribute to a nonparty (or nonparties) the excess settlement funds for their next best use—a charitable purpose reasonably approximating the interests pursued by the class."  *Id.* (internal quotation marks omitted) (quoting *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 327 (3d Cir. 2019)).  The goal of the *cy pres*

28

doctrine is to put "the excess settlement funds [to] their next best use—a charitable purpose reasonably approximating the interests pursued by the class." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 168–69 (3d Cir. 2013).  The Court finds that, to the extent there are excess settlement funds, donating that money to the Pennsylvania IOLTA Board will put the money to its next-best use.  Therefore, the Pennsylvania IOLTA Board will be approved as the *cy pres* recipient.

### X.    CONCLUSION

For these reasons, the Court grants the motion for approval of the class/collective settlement and approves Plaintiff's request for an award of attorney's fees, reimbursement of expenses to class counsel, and a service award in the amount of $2,500.00.

An appropriate order follows.